**LANE DRUG STORES, Inc., et al. v. LEE,**
Comptroller of Florida, et al.

**WINN & LOVETT GROCERY CO. v. SAME.**
Nos. 248, 249.

District Court, N. D. Florida.
July 29, 1935.

Thos. B. Adams, of Jacksonville, Fla. (H. P. Adair and Knight, Adair, Cooper & Osborne, all of Jacksonville, Fla., of counsel), for plaintiffs Lane Drug Stores and others.

Marks, Marks, Holt, Gray & Yates, of Jacksonville, Fla., for plaintiff Grocery Co.

Cary D. Landis, Atty. Gen. of Florida, and J. V. Keen and H. E. Carter, Asst. Attys. Gen. of Florida (Philip D. Beall, of Pensacola, Fla., and Henry C. Tillman, of Tampa, Fla., of counsel), for defendants.

Before BRYAN, Circuit Judge, and RITTER and LONG, District Judges.

LONG, District Judge.

The attack is made on Senate Bill No. 724, "An Act to provide for the relief of the public free schools of the State of Florida, by raising revenue for the county school fund by levying and imposing a tax upon the privilege of operating a store

or stores within this state, to classify such stores for the purpose of such taxation and of graduating the tax in accordance with the number of stores operated under a single ownership, management or control, to declare the public policy on which this Act is founded; to provide for the administration and enforcement of this Act and for the promulgation and enforcement of rules and regulations to facilitate such enforcement; to provide for the creation and enforcement of a lien upon the property of persons liable for the payment of such tax; to provide penalties for the violation of this Act and of rules or regulations lawfully made under the authority hereof; to repeal conflicting laws, expressly but on condition including Chapter 16071, Laws of Florida of 1933; and to appropriate the revenues derived thereunder."

Section 4 of the act imposes a tax equal to the amount due under the provisions of subdivision A and the amount due under subdivision B.

| Subdivision A | | |
|---|---|---|
| Class | Number of Stores | Amount of Tax |
| 1 | 1 store | $ 10.00 |
| 2 | 2 or 3 stores | 50.00 |
| 3 | 4 to 6 stores | 100.00 |
| 4 | 7 to 10 stores | 200.00 |
| 5 | 11 to 15 stores | 300.00 |
| 6 | more than 15 stores | 400.00 |

| Subdivision B | | |
|---|---|---|
| Class | Number of Stores | Amount of Tax |
| 1 | 1 store | ½ of 1% gross receipts |
| 2 | 2 or 3 stores | 1% of gross receipts |
| 3 | 4 to 6 stores | 2% of gross receipts |
| 4 | 7 to 10 stores | 3% of gross receipts |
| 5 | 11 to 15 stores | 4% of gross receipts |
| 6 | more than 15 stores | 5% of gross receipts |

Section 4 further provides that: "If the tax in subdivision 'B' of this section be, for any reason, held invalid and inoperative, then the taxes in each of the six classes of stores enumerated in subdivision 'A' of this section shall be twice the amount set forth in said schedule 'A,' in lieu of the rates therein prescribed."

Section 18, Saving Clause, provides: "If any section, subsection, sentence, clause, phrase or word of this act, is, for any reason, held or declared to be unconstitutional, inoperative or void, such holding or invalidity shall not affect the remaining portions of this Act; and it shall be construed to have been the legislative intent to pass this Act without such unconstitutional, inoperative or invalid part therein; and the remainder of this Act after the exclusion of such part or parts shall be deemed and held to be valid as if such excluded parts had not been included herein," etc.

The bills charge that the act is in violation of section 16 of article 3 of the Constitution of Florida, in that the title of the act contains more than one subject and is not broad enough. This question has been presented to the Supreme Court of the state many times.

The act deals with the subject of taxation, and all matters pertaining to that subject can be included unless the title is misleading or deceptive or so vague as to be both. There are no two unconnected subjects embraced in this act, but it deals with one subject and matters properly connected therewith. State v. Bryan, 50 Fla. 293, 39 So. 929; Schiller v. State, 49 Fla. 25, 38 So. 706; Whitney v. Hillsborough County, 99 Fla. 628, 127 So. 486; Pullman Co. v. Knott, 70 Fla. 9, 69 So. 703.

It is unnecessary to discuss subdivision B of section 4 of the act, because the decision in Stewart Dry Goods Co. v. Lewis, 55 S. Ct. 525, 79 L. Ed. 1054, decided March 11, 1935, by the Supreme Court of the United States, fully sustains the contention of plaintiffs that subdivision B of section 4 of the act is so arbitrary, unreasonable, and discriminatory that it denies to these plaintiffs equal protection of the law guaranteed by the Fourteenth Amendment of the United States Constitution.

Dealing with the act as a whole, we are not impressed with the contention of plaintiffs that the license or excise tax imposed by subdivision A, and the amount due under subdivision B, composes a formula, a tax singular in its nature, but rather hold to the rule that where a part of a statute is in conflict with a constitutional provision, a court has no authority to declare the remainder void also, if, where the unconstitutional portion is stricken out, that which remains is complete in itself. Subdivisions A and B of the section of the act are not dependent the one on the other or so connected together in meaning that it cannot be presumed that the Legislature would have passed the one without the other; on the contrary, the paragraph contained in section 4 providing for twice the amount set forth in subdivision A in the event subdivision B be held invalid and inoperative, and section 18, the Saving Clause, are conclusive of the intention of the law making body.

674

"If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." Cooley, Constitutional Limitations (8th Ed.) 360.

The rule in this state is well settled. Di Lustro v. Penton, 106 Fla. 198, 142 So. 898, 899.

█ Having held that the title of the act is sufficient and that subdivision A of section 4 is complete in itself and capable of being executed in accordance with the apparent legislative intent, we have reached the conclusion that said subdivision of the section is not unreasonable and discriminatory, nor does it deny to these plaintiffs equal protection of the law as guaranteed by the Fourteenth Amendment of the Constitution.

In State Board of Tax Commissioners of Indiana v. Jackson, decided by our Supreme Court in May, 1931, 283 U. S. 527, 51 S. Ct. 540, 543, 75 L. Ed. 1248, 73 A. L. R. 1464, the court said:

"The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. * * * The fact that a statute discriminates in favor of a certain class does not make it arbitrary, if the discrimination is founded upon a reasonable distinction. * * *

" 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulations or taxation through an excise or license tax.' * * *

"It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives, or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the Legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."

In the case of Louis K. Liggett Co. v. Lee, decided in March, 1933, 288 U. S. 517, 53 S. Ct. 481, 484, 77 L. Ed. 929, 85 A. L. R. 699, the act provided for an excise tax graduated in eleven classes upon the number of stores operated or maintained from one store at $5 to over seventy-five stores at $50 each. The constitutionality of this act was sustained in every respect, other than the feature which increased the rate of taxation where stores were located in more than one county.

"Neither similarity of opportunities and advantages in some aspects, nor the fact that the one kind of store competes with the other, is enough to condemn the discrimination in the taxes imposed. It is needless to repeat what was said in the Jackson Case to the effect that the differences between the subjects taxed need not be great, and that, if any reasonable distinction can be found, the duty of the court is to sustain the classification embodied in the law."

In the case of Magnano Company v. Hamilton, 292 U. S. 40, 54 S. Ct. 599, 78 L. Ed. 1109:

"The due process clause of the Fourteenth Amendment, applied to the States, like the due process clause of the Fifth Amendment, applied to Congress, is not a limitation upon the taxing power. * * *

" 'The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected.' "

There is authority for the statement that if the Legislature has the lawful power to tax and the tax be within that power, then the results to arise from its exercise should not be restricted because of the exertion of the power. In the recent case decided by the Supreme Court of the United States, Fox v. Standard Oil Company, 294 U. S. 87, 55 S. Ct. 333, 338, 79 L. Ed. ——, decided January of this year, which case we think is very much on all fours with the case at bar in which the license fee was graduated according to the number of stores operated, ranging from $2 upon two stores or more to $250 upon each in excess of seventy-five, the court emphasized the fact: "When the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers. * * * 'Even if the tax should destroy a business it would not be made invalid or require compensation upon that ground

alone. Those who enter upon a business take that risk.' Alaska Fish Salting & By-Products Co. v. Smith, 255 U. S. 44, 48, 41 S. Ct. 219, 220, 65 L. Ed. 489, quoted in Magnano Co. v. Hamilton, supra, 292 U. S. [40], 46, 54 S. Ct. 599 [78 L. Ed. 1109]. * * *

"A chain, as we have seen, is a distinctive business species, with its own capacities and functions. Broadly speaking, its opportunities and powers become greater with the number of the component links; and, the greater they become, the more far-reaching are the consequences, both social and economic. For that reason the state may tax the large chains more heavily than the small ones, and upon a graduated basis. * * *

"If only one form of chain chooses so to multiply its units, after arriving at the topmost levels, as to make the burden heavy, it owes its position on the scale and the aggravation of the tax to the exigencies of business and not to those of law. The classification is not arbitrary, but in its normal operation has a rational relation to the subject-matter to be taxed, the capacity to pay, and the justice of the payment. * * *

"We have never yet held that government in levying a graduated tax upon all the members of a class must satisfy itself by inquiry that every group within the class will be able to pay the tax without the sacrifice of profits. The operation of a general rule will seldom be the same for everyone. If the accidents of trade lead to inequality or hardship, the consequences must be accepted as inherent in government by law instead of government by edict."

We have reached the conclusion that so far as subdivision A of the section is concerned, the classification is not so discriminatory, arbitrary, and unreasonable as to destroy the legislation.

As was said in Fox v. Standard Oil Company, supra: "The tax now assailed may have its roots in an erroneous conception of the ills of the body politic or of the efficacy of such a measure to bring about a cure. We have no thought in anything we have written to declare it expedient or even just, or for that matter to declare the contrary. We deal with power only."

The passage of the act by the Legislature had but one purpose, the collection of revenue by imposing a license tax upon

certain businesses operating in the state that sufficient funds might be available for the relief of the public schools. What we have said with reference to the power of a sovereign state to levy a tax of this character applies as well to the provision doubling the tax as to subdivision A of the section. If the Legislature had the power, and we hold it did, to levy the tax as provided in subdivision A, it had the power to double the tax that sufficient revenue might be raised to carry on and provide relief for its schools.

For the reasons stated the act is sustained, with the exception of subdivision B of section 4.