# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | |
| | ) | |
| | ) | **I.D.:** 91009844DI |
| v. | ) | |
| | ) | |
| **CHRISTOPHER DESMOND,** | ) | |
| | ) | |
| Defendant. | | |

**Submitted:** June 6, 2024
**Decided:** July 16, 2024

## <u>MEMORANDUM OPINION AND ORDERS</u>

*On Defendant's Motion for Post Conviction Relief –* **DENIED**;
*On Defendant's Motion for Sentence Modification Pursuant To Rule 35(B) –*
**DENIED.**

*Andrew Fletcher*, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, *for the State of Delaware.*

*Christopher Desmond*, SBI # 00160380, *Defendant.*

**JONES, J.**

## INTRODUCTION

On October 19, 2023 Defendant, Christopher Desmond ("Defendant" or Desmond") filed a Motion for Sentence Modification under Superior Court Criminal Rule 35(b). On March 27, 2024, Desmond filed his eighteenth Motion for Post-Conviction Relief under Superior Court Criminal Rule 61.[1] Briefing on both motions has been completed. Having considered Defendant's Motions, the State's Response, and this Court's review of the record, for the reasons stated below, Defendant's Motions are **DENIED**.

## FACTUAL OVERVIEW

On December 15, 1990, three men entered a Super Fresh Supermarket. One of the men displayed what appeared to be a handgun, and a second man removed cash from the store's safe. Two of the men fled, a store clerk pressed the store's panic button that was located under the counter, the third man asked what the clerk was doing, and then he fled. Witnesses subsequently identified Desmond as the third man.

On July 18, 1991, a man entered a Happy Harry's pharmacy and pointed a gun at the head of a store employee. The man ordered the store employee to empty the contents of the store's safe into a box. The man took the box and fled. The store employee later identified the armed man as Desmond.

---

[1] Docket Item ("D.I.") 411.

On September 7, 1991, a man approached the customer service office at an ACME Supermarket and pointed a gun at a store employee. The man demanded that the employee open the safe and give him the money it contained. While the robbery was in progress, a second employee entered the office, the armed man pointed the gun at the second employee, and the armed man ordered the second employee to help the first employee take the money out of the safe. Both employees subsequently identified Desmond as the armed man.

Approximately one hour after the robbery at ACME, a man inserted a gun through the window of a courtesy booth at the Tri-State Mall Thriftway ("Thriftway") demanding that the clerk inside the booth give him large bills. The clerk gave the man a large amount of cash from the store safe. Two other Thriftway employees entered the booth during the robbery, and the armed man told them to be quiet. The two employees later identified Desmond as the armed man.

On October 8, 1991, a man attempted to enter the cashier's booth at Shoprite Supermarket ("Shoprite"). Two Shoprite employees confronted the man, the man then pulled out a gun, and the man directed the employees to lie down. Two other Shoprite employees confronted the armed man, and the man turned the gun towards them. The man left the cashier's booth, went to the courtesy booth, and demanded money from two employees in the booth. One Shoprite employee put

2

$1,601.00 in one-dollar bills wrapped in purple and white D.A.R.T. money wrappers in a yellow Shoprite bag, and the man attempted to flee. Another individual backed away, and the armed man escaped. Several witnesses identified Desmond as the armed man.

The police obtained a search warrant to search Desmond's house, and they found a yellow Shoprite bag, $1,599.00 in one-dollar bills, and numerous purple and white D.A.R.T. money wrappers in the house. Desmond was hiding under laundry in his basement and was arrested. The police took Desmond to the police station, Desmond jumped from a second story window and attempted to escape, and the police recaptured him after a brief chase.

## PROCEDURAL HISTORY

Defendant was convicted in November of 1992, following a jury trial, of several dozen criminal offenses in connection with a series of armed robberies of different businesses located in New Castle County, Delaware, which took place between 1990 and 1991. Defendant's convictions include ten (10) counts of Robbery in the First Degree and three (3) counts of Theft. In January of 1993, Defendant was sentenced to seventy-eight (78) years of Level V incarceration.

Defendant has filed numerous unsuccessful petitions, motions, and appeals in this Court, the Supreme Court of Delaware, the United States District Court for the District of Delaware, the Third Circuit Court of Appeals, and the Supreme

Court of the United States since his 1992 conviction. These include seventeen Motions for Post Conviction Relief and at least twelve prior Motions for Sentence Modification.[2]

I will first turn to the Post Conviction Relief Motion.

**RULE 61 POST CONVICTION RELIEF MOTION**

Before addressing the merits of any postconviction claim, the Court must first determine whether the claims pass through the procedural filters of Rule 61.[3]

A motion for postconviction relief under Rule 61 is untimely if it is filed more than one year after a conviction is finalized. Second or subsequent Rule 61 motions are not permitted and will be summarily denied unless certain limited exceptions apply. Grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred unless the moving party can show "cause for relief" and "prejudice from [the] violation."[4] A procedural bar to relief does not apply to claims that the Court lacked proper jurisdiction over the case, to claims that plead with particularity that new evidence exists which creates a strong inference that a Defendant is actually innocent, or that new and retroactively applicable rule of Constitutional law renders a conviction invalid.

---

[2] D.I. 126, 140, 146, 175, 205, 219, 230, 267, 279, 284, 304, 314, 327, 350, 351, 407, and 411; D.I. 149, 151, 189, 226, 243, 252, 299, 335, 342, 369, 395, and 404.

[3] *See Younger v. State*, 580 A.2d 552, 554 (Del. 1990) ("This Court applies the rules governing procedural requirements before giving consideration to the merits of the underlying claim for postconviction relief.").

[4] Rule 63(i)(3).

This Court will not address the substantive aspects of Desmond's claims if the claims are procedurally barred.[5] Under Rule 61, a "motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court." Second or subsequent motions for post-conviction relief under Rule 61 must be summarily dismissed unless Defendant pleads with particularity (i) that new evidence exists that creates a strong inference of actual innocence on the part of the Defendant, or (ii) pleads that a new and retroactively applicable rule of constitutional law has been established by the Supreme Court of Delaware or the United States Supreme Court which would render Defendant's sentence invalid.[6]

As previously mentioned, this is Defendant's eighteenth Rule 61 motion. As such, Defendant's Motion must demonstrate that one of the two exceptions to summary dismissal of secondary or subsequent Rule 61 motions applies in order to prevail. As stated below, Defendant's Motion cannot credibly assert that either of these two bars applies in this case.

Many of Defendant's previous petitions and motions raised the same issue that Defendant raises in the instant Motion – that the element of theft is lacking for the

---

[5] *See id.*
[6] Del. R. Super. Ct. RCRP. 61 (d)(2) (i-ii).

robbery convictions. As he does in the instant motion, Defendant has continually cited in his previous Motions to the cases of *State v. Bridgers*, and *State v. Owens*, as support for his positions. All Courts have consistently rejected the claims.

Most recently, this Court denied Defendant's seventeenth attempt to receive relief under Superior Court Criminal Rule 61. Applying Rule 61, this Court wrote:

> Desmond takes issue with this Court's use of existing Rule 61 to analyze his claim. According to Desmond, the standards of Rule 61 that were in effect at the time of his conviction should apply. Desmond is incorrect as Delaware law is clear that, in analyzing Rule 61 motions, the Rule in effect at the time the motion was filed controls.[7] Even assuming that Desmond is correct, he is not entitled to relief under the pre-2014 Amendment to Rule 61 which allowed a Court to grant relief where, in the Court's view, there was a manifest injustice. No manifest injustice has occurred in this case. The record reflects that Desmond was charged for a series of robberies which took place at multiple supermarkets and pharmacies in the Wilmington area between 1990 and October 1991. There is simply no manifest injustice in not applying *Wooden* to Defendant's case.[8]
>
> Desmond also maintains that this Court is required to review his convictions and sentences under the First Step Act,[9] a law passed by Congress, because Delaware received funds under the Act. The review of Desmond's sentence and convictions is not controlled by the First Step Act. The First Step Act is

---

[7] *Redden v. State,* 150 A.3d 768 (Del. 2016) and *Bradley v. State*, 135 A.3d 748, 757 n.24 (Del. 2016).
[8] The Court notes that, prior to 2014, numerous courts have considered Desmond's Claim for Relief in this case, and every single court that applied the pre-2014 version of Rule 61 denied Desmond's Claim for Relief.
[9] FIRST STEP ACT OF 2018, PL 115-301, December 21, 2018, 132 Stat 5194.

6

a federal law applying to federal crimes *only*.[10] The review is controlled by Delaware law and the United States Constitution. This Court joins the multitude of other Courts and Judges that have reviewed Defendant's case and have determined that Defendant's convictions and sentences were proper. Desmond further maintains that *Concepcion v. United States*,[11] a recently decided case by the United States Supreme Court, supports his claim that he is entitled to application of *State v. Owens*[12] and *State v. Bridgers*.[13] In *Concepcion*, the Supreme Court held that under the First Step Act, district courts are permitted to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the Act. This Court reiterates that *Concepcion* and the First Step Act are inapplicable to Defendant's case because his convictions are pursuant to state law *not* federal law. Additionally, this Court has already addressed Defendant's claim which relies on *Owens* and *Bridges*. The Court reiterates that *Owens* and *Bridges* did not re-fine or re-interpret the elements of first-degree robbery, neither did it make such reinterpretation retroactively applicable to cases on collateral review.[14]

In this most recent application, Defendant once again argues that the 2007 Delaware Superior Court decision, *State v. Bridgers*,[15] and the 2010 Delaware Superior Court decision, *State v. Owens*,[16] invalidates his robbery convictions because "theft" of property from each victim is an essential element to Robbery

---

[10] *Id.* at § 404(a)("[T]he term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2018 (Public Law 111-220; 124 Stat. 2372, that was committed before August 3, 2010.").

[11] 2022 WL 2295029, at *12(Jun. 27, 2022).

[12] 2010 WL 2892701 (Del. Super. Ct. Jul. 16, 2010).

[13] 988 2.d 939 (Del. Super. Ct. 2007), *aff'd*, 2009 WL 824536 (Del. Mar. 30, 2009).

[14] *See Desmond v. Phelps*, 2012 WL 3518531, at *2 (Del. Aug. 15, 2012).

[15] 988 A.2d 939 (Del. Super. Ct. 2007).

[16] 2010 WL 2892701 (Del. Super. Ct. 2010).

First Degree.[17]  Desmond claims that *Bridgers* and *Owens* overrule the Delaware

Supreme Court case *Ross v. State*, which held that:

> When one robs several persons, albeit in a single
> episode, such an offender may be separately punished
> for each robbery and that ownership of the property
> by the victim is not an essential element of the offense
> of robbery.[18]

Desmond further argues that the 2023 United States Supreme Court case *Cruz v.*

*Arizona* compels this Court to recognize that the holding in *Bridgers* and *Owens*

represented a "significant change in the law" that overcomes any Delaware

procedural bar to his instant motions for postconviction relief.

Desmond's argument that *Bridgers* and *Owens* overrule *Ross* is incorrect

because *Ross* was decided by the Delaware Supreme Court, the highest court in

Delaware, fundamentally incapable of being overruled by two Delaware Superior

Court cases, *Bridgers* and *Owens*.

Further, Desmond's reliance on *Cruz* to overcome Rule 61's procedural bars is

without merit.  Demond seeks to use Superior Court cases, *Bridgers* and *Owens*,

to represent a significant change in law as demonstrated in *Cruz*.  However, to

overcome Rule 61's procedural bars by relying on a change in the law, the

appellant must "plead with particularity a claim that a new rule for each of

constitutional law, made retroactive to cases on collateral review by the United

---

[17] D.I. 411.

[18] *Ross v. State*, 560 A.2d 491 (Del. 1989).

States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction invalid."[19] *Bridgers* and *Owens* are not the decision of the Delaware Supreme Court nor the United States Supreme Court and therefore, do not establish a new rule of constitutional law as necessary to overcome Rule 61's procedural bars.

Even if there were no procedural bars, Desmond's substantive argument is without merit. This Court has previously reviewed the substance of Desmond's claim that some of his Robbery First Degree convictions lack the element of "theft." In his first motion for postconviction relief, Desmond argued that not all his Robbery First Degree convictions satisfied the elements of theft because he did not take property from, and belonging to, all the victims.[20] Although this Court found that his motion was procedurally barred, it also cited *Ross* as holding that "ownership is not an essential element of robbery and thus where one robs several persons in a single episode, such offender may be separately punished for each robbery."

In *Bridgers*, this Court held that "someone who is merely a threatened bystander has not been robbed" and that "[a] threatened bystander is a victim of […] aggravated menacing - not a victim of robbery."[21] The *Bridgers* Court found

---

[19] Super. Ct. Crim. R. 61(d)(2)(ii).
[20] *State v. Desmond*, 1995 WL 717628 at *3 (Del. Super. Ct., Nov. 16, 1995).
[21] *Bridgers*, 988 A2d at 944.

that customers present during a bank robbery, but who were not robbed themselves, were not victims of robbery.[22]  But the Court also stated that it "assumes that anyone from whom property is taken by threat or force *and anyone actively involved during a theft-in-progress* […]  *may be a robbery victim*" and that "a jury could find that *neutralizing employees* during a bank robbery *by threatening them is causally related to the theft.*"[23]  The Court in *Owens* adopted the holding in *Bridgers* that an individual who was merely a threatened bystander to a robbery was not a victim of robbery.[24]

Desmond's facts show that Desmond forced the employees of establishments that he robbed to be actively involved in the theft-in-progress, and he sought to neutralize the employees. As such, the employees of the establishments robbed by Desmond were not merely threatened bystanders as contemplated in *Bridgers.*  In short, on the merits there is no basis for Defendant's claims under Rule 61.

### *RULE 35(b) MOTION*

In this Motion, Defendant moves the Court pursuant to Superior Court Criminal Rule 35(b) for a review of his 78-year sentence for ten (10) counts of Robbery First Degree, ten (10) counts of Possession of a Deadly Weapon During the Commission of a Felony, three (3) counts of Possession of a Deadly Weapon by a

---

[22] *Id.*
[23] *Id.* (emphasis added).
[24] *Owens*, 2010 WL 2892701, AT *10.

Person Prohibited, three (3) counts of Theft Felony, two (2) counts of Conspiracy Second Degree, and Escape Third Degree.[25] Desmond advances a number of arguments as to why his sentence is unconstitutional and violates the prohibition against cruel punishment in Article I, Section 11, of the Delaware constitution. I first address the procedural bars.

Under Rule 35(b), a motion for reduction or modification of sentence must be filed within 90 days of sentencing absent a showing of extraordinary circumstances.[26] A heavy burden is placed on a defendant to establish extraordinary circumstances in order to uphold the finality of sentences.[27] This Court has rejected the argument that "changing scientific and social attitudes constitute extraordinary circumstances under Rule 35(b)."[28]

The instant Rule 35(b) motion comes more than 30 years after his sentence. Desmond maintains that extraordinary circumstances exist because there is new scientific evidence to support his claim. This does not constitute an extraordinary circumstance under Rule 35(b), and is therefore, barred.

Beyond the lack of extraordinary circumstance, the claim is also barred as repetitive. Rule 35(b) bars repetitive motions, there is no exception to this bar,

---

[25] D.I. 420.
[26] *Fidalgo v. State*, 2024 WL 1252118 (Del. 2024).
[27] *Id*.
[28] *State v. Norman*, 2024 WL 1506979 (Del. Super. 2024).

and for this Court to ignore this bar would be an abuse of discretion.[29]  Desmond

has filed twelve prior Rule 35(b) requests for modifications.[30]  Even assuming that

the referenced procedural bars did not apply, Desmond's motion fails on the

merits.

Desmond argues that the omission of the word "unusual" in Article I,

Section 11 of the Delaware Constitution shows that the drafters of the Delaware

Constitution intended broader protection for its citizenry than that afforded by the

Eighth Amendment to the United States Constitution.  He urges this court to find

that his sentence violates the prohibition against cruel punishment in Article I,

Section 11.  Desmond relies on the *Harmelin v. Michigan*[31] decision, stating that

Delaware considers a life sentence to be 45 years for habitual offenders under *11

Del. Co. 4214(a)*, and the Eighth Amendment's "narrow proportionality principle"

that "applies to noncapital sentences" to support his argument.

In 1963, in *State v. Cannon*, the Delaware Supreme Court clarified that the

omission of the word "unusual" in Article I, Section 11 "has little or no

significance."[32]  The Supreme Court explained that the 1776 Declaration of Rights,

adopted by the Convention which formed the Delaware State, provided "that

excessive bail ought not to be required, nor excessive fines imposed, nor cruel or

---

[29] *State v. Culp.*, 152 A2d 141, 145 (Del 2016); *Johnson v. State*, 2020 WL 5626231 (Del 2020).
[30] D.I. 149, 151, 189, 226, 243, 252, 299, 335, 342, 369, 395, and 404.
[31] 501 U.S. 957 (1991).
[32] *State v. Cannon*, 190 A.2d 514, 515 (1963).

unusual punishments inflicted."[33] "Article 30 of the [Delaware] Constitution of 1776, adopted by the same Convention, proclaimed the Declaration of Rights in all its provisions to be inviolate."[34] The Supreme Court noted that "[i]n 1792, a new Constitution for the State of Delaware was adopted which, in Article I, Section 11, continued the prohibition against cruel and unusual punishments, omitting the phrase 'or unusual'" and adopted the current language.[35] The Court concluded that "since the independence of the State of Delaware, there has been in its basic law a prohibition against the infliction of cruel punishment for crime."[36] The Delaware Supreme Court further concluded that "[t]his prohibition has existed in substantially the same form since 1776, for we think the omission of the phrase 'or unusual' has little or no significance.'"[37]

In 1991, in *Harmelin*, the United State Supreme Court concluded that the word "unusual" held a meaning independent of the word "cruel" in the context of the Eighth Amendment.[38] The U.S. Supreme Court held that a Michigan law requiring a mandatory life sentence without parole for possession of 672 grams of cocaine was not cruel and unusual punishment under the Eighth Amendment.[39] *Harmelin* argued that the sentence was disproportionate to the crime committed and,

---

[33] *Id*.
[34] *Id*.
[35] *Id*.
[36] *Id*.
[37] *Id*.
[38] 501 U.S. at 967.
[39] *Id*. at 961, 996.

therefore, was cruel and unusual.[40]  The U.S. Supreme Court rejected that argument, noting that "a disproportionate punishment can perhaps always be considered 'cruel,' but it will not always be (as the text also requires) 'unusual.'"[41]

Desmond fails to make a compelling argument that *Harmelin* requires this Court to depart from Delaware Supreme Court precedence and interpret the omission of the word "unusual" in Article I, Section 11 as holding a specific significance (that would somehow require this Court to reduce his sentence).  The United States Supreme Court has made clear that "[i]t is fundamental that state courts be left free and unfettered by [it] in interpreting their state constitutions."[42] The fact that the United States Supreme Court has interpreted the use of the word "unusual" to have a unique meaning in the federal constitution does not dictate how the Delaware Supreme Court is to interpret the lack of the word in the Delaware Constitution.[43]  Nor does it follow, as Desmond asserts without support, that the omission of the word "unusual" gives additional rights.

In fact, this Court has already rejected an argument citing *Harmelin* that was similar to Desmond's argument.  In *State v. Jones*, Jones argued to this Court that *Harmelin* invalidated a Pennsylvania Supreme Court holding that the phrase "cruel

---

[40] *Id*. at 961.

[41] *Id*. at 967.

[42] *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940).

[43] *Id. See also Cousins v. Goodier*, 283 A.3d 1140, 1149 n.46 (Del. 2022) (quoting Jeffrey S. Sutton, Randy J. Holland, Stephen R. McCallister, and Jeffrey M. Shaman, *State Constitutional  Law: The Modern Experience iii* (West 2020) ("[S]o long as state constitutional protection does not fall below the federal floor, a state court may interpret its own state constitution as it chooses, irrespective of federal constitutional law")).

punishment" in the Pennsylvania Constitution "is coextensive with the Eighth Amendment's 'cruel and unusual punishments' and should be interpreted identically."[44] This Court rejected that reasoning as "simply incorrect" because "[t]he Pennsylvania Supreme Court is the final arbiter of the Pennsylvania Constitution and *Harmelin* has no application in that context.[45]

Under Delaware Supreme Court precedence, Article I, Section 11 provides the same rights as the Eighth Amendment.[46] In terms of life sentences without parole, the United States Supreme Court has held "that the Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits mandatory life-without-parole sentences for murderers under 18, but the Court allowed discretionary life-without-parole sentences for those offenders."[47] Desmond was not under 18 when he was sentenced, nor was his sentence even a mandatory life-without-parole sentence.[48] Thus, his lengthy sentence does not violate the Eighth Amendment, and, in turn, it does not violate Article I, Section 11 of the Delaware Constitution.[49] Although Defendant believes that his sentence is a harsh penalty, this Court finds it to be an appropriate sentence.

---

[44] *State v. Jones*, 2004 WL 2190097, at *6 & n.28 (Del. Super. Aug. 31, 2004).
[45] *Id*. at *6 n.28.
[46] *Cannon*, 190 A.2d at 515.
[47] *Jones v. Mississippi*, 593 U.S. 98, 103 (2021).
[48] Desmond was sentenced to consecutive sentences for 29 convictions.
[49] *Taylor v. State*, 2018 WL 1212021, *2 (Del. Mar. 7, 2018) (holding that "sentence of life imprisonment without benefit of probation or parole does not violate [the defendant's] constitutional rights under the Eighth Amendment or Fourteenth Amendments").

Desmond next maintains that his sentence is unusual because there are no sentences in Delaware to compare Desmond's 78-year sentence to, and any offender who received a similar sentence was a habitual offender or had aggravating factors outside of Robbery and weapons convictions. For this reason, the Court, according to Desmond, must undertake a "threshold comparison of the crime committed, and the sentence imposed." This argument fails because there are ample cases in Delaware where a defendant has been sentenced for a number of crimes and when the aggregate of the years are totaled, it is clear that the sentence amounts to a life sentence.

Desmond next addresses similar sentences given to Defendants in various other States. Desmond claims that "if the Delaware legislature authorized the Court to impose in 1991 under *11 Del. C. 4214(a)* up to life, which was 45 years maximum in 1991, Desmond's sentence has to fall within the gross disproportionality analysis of the Eighth Amendment because he received a sentence greater than that reserved for the worst offenders.[50]

This argument also fails. None of the examples Desmond provides come close to the number of his convictions.[51] Further, a closer examination of the jurisdictions that Desmond cites demonstrates that his sentence is not overly harsh

---

[50] D.I. 420.
[51] Def. Mot. At 52-57.

16

in comparison.[52] The length of Desmond's sentence results from the number of offenses for which he was convicted and the fact that he was sentenced consecutively for each of the offenses. All of the states Demond cites in his Motion permit consecutive sentencing.

Ultimately, Desmond does not cite any authority suggesting that the consecutive sentences that he received for his numerous convictions violate the Constitution of the United States or Delaware. The Delaware Supreme Court has recently stated that it is not aware of any authority stating, "that a sentencing scheme that mandates sentences for criminal offenses to run consecutively with other sentences is constitutionally overbroad."[53] Moreover, Desmond points to no authority that grants him a right to parole. The United States Supreme Court has stated that "there is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners."[54] And the Delaware Supreme Court has rejected the argument that the imposition of life sentences without parole for defendants 18 years of age or older violate their constitutional rights.[55]

---

[52] D.I. 419, at 15-18.
[53] *Burrell v. State*, 207 A.3d 137, 146 (Del. 2019)
[54] *State v. Spence*, 367 A.2d 983, 989 (Del. 1976).
[55] *Swarthout v. Cooke*, 562 U.S. 216, 220 (2011).

## CONCLUSION

Therefore, for reasons stated herein, Desmond's Applications for Relief are

**DENIED**.

    **IT IS SO ORDERED.**


                                                */s/ Francis J. Jones, Jr.*
                                                Francis J. Jones, Jr., Judge

/jb
*Original to the Prothonotary*