**KRAFT et al. v. LOWE et al.**

No. 973.

Municipal Court of Appeals for the
District of Columbia.

Submitted Nov. 20, 1950.

Decided Dec. 19, 1950.

Solomon Grossberg, Irving B. Yochelson and Isadore Brill, all of Washington, D. C., for appellants.

Stanley E. Otto, Washington, D.C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

In 1943 the Lowes purchased from the Krafts[1] a house and lot in the District of Columbia. In 1949 the Lowes brought suit against the Krafts alleging that in 1946 (less than three years prior to bringing suit) they discovered for the first time that the sewerage system of the house was not connected with the public sewer but instead to a septic tank on the premises, and that they had been compelled to expend nearly a thousand dollars in connecting such system with the public sewer.

The complaint was in two counts, one in contract and one in tort. The trial court, sitting without a jury, entered a general finding and judgment for plaintiffs in the full amount asked. In this state of the record we must assume all disputed questions of fact were resolved in plaintiffs' favor, and determine whether the judgment can be sustained under either count. It would have been most helpful had the trial court made findings of fact or at least indicated on which count finding and judgment were entered.[2]

---

1. The exact relationship of the Krafts among themselves and to the property is not made clear by the record. It was stipulated that a relationship of principal and agent existed between Melvin L. Kraft and William B. Kraft who are son and father. William B. Kraft alone signed the contract of sale. The record does not show who signed the deed. Appellants' brief states that appellants, apparently referring to the three Krafts, were owners of the property and agreed to sell to the Lowes. It would appear that the case was tried on the theory that either all or none of the Krafts were liable.

2. The trial court's Rule 48b permits special findings of fact and conclusions of law in non-jury cases, but, unlike Fed. Rules Civ.Proc. rule 52(a), 28 U.S.C.A., does not require them.

The following facts are not in dispute. The house and lot and considerable adjoining land were originally owned by the Davidsons. There was no public sewer in the street on which the house fronted and the sewerage system of the house was connected with a septic tank in the yard. In 1930 the District installed a "dry" sewer in the street but it was not available for connection until 1939. The Davidsons were not notified by the District that connection with the public sewer should be made and no connection was made by them. The Krafts wished to buy the Davidsons' unimproved land for building purposes and in order to buy it were compelled to also purchase the house and lot. The purchase was made in 1942. The Krafts offered the house and lot for sale and in 1943 sold it to the Lowes. The main dispute relates to whether or not the Krafts, who admittedly knew the house had no public sewer connection, disclosed that fact to the Lowes before they purchased.

According to the testimony of the Lowes they knew nothing of the septic tank until August 1, 1946, when the sewerage system became clogged and persons employed to correct the situation discovered the septic tank and called it to their attention. The Lowes expended $152.30 in locating and correcting the clogged septic tank, and thereafter on order of the District authorities connected the house with the public sewer at a cost of $840.55.

The contract claim rests on the following provision of the contract of sale: "All notices of violations of Municipal orders or requirements noted or issued by any Department of the District of Columbia, or prosecutions in any of the courts of the District of Columbia on account thereof against or affecting the property at the date of the settlement of this contract shall be complied with by the seller and the property conveyed free thereof. This provision

shall survive the delivery of the deed hereunder."

Code 1940, §§ 6—401 to 403 in substance provide that all dwellings shall be connected with a public sewer when available; that the Commissioners shall notify the owners to make such connections; and that an owner failing to make such connection within thirty days after notice is guilty of a misdemeanor. Those sections of the Code have been in existence since 1896. Code 1940, § 6—701, enacted April 22, 1940, makes it unlawful to maintain, where public sewer and water mains are available, any sewerage system except by means of water closets connected with such sewer and water mains.

It is the contention of the appellants that by reason of the requirements of law above referred to and the fact that public sewer connection was available as early as 1939, that a violation of a municipal requirement existed with respect to the property when conveyed to them in 1943, and that under the quoted contract provision appellants were bound to convey the property free of such violation.

The provision in the contract, or one substantially like it, has been in common use in the District of Columbia in contracts for the sale of real estate for many years, but we have found no case in this jurisdiction construing it. A similar clause appears to be in general use in New York and has been before the courts of that State in a number of cases. The majority of cases there indicate that such provision applies only to violations of which notice has been given at or prior to the time of conveyance,[3] but one case, the latest we have found, indicates that such provision binds the vendor to convey free of all violations.[4]

In our opinion the provision of the contract in this case covers only violations of

3. Kaloumenos v. Bottaccio, Sup., 67 N.Y. S.2d 527, affirmed, 273 App.Div. 907, 77 N.Y.S.2d 286; Horby Realty Corp. v. Yarmouth Land Corp., Sup., 67 N.Y.S.2d 525, reversed 270 App.Div. 696, 62 N. Y.S.2d 173; Montkane Funds, Inc., v. Ruff, Sup., 57 N.Y.S.2d 208, affirmed 269 App.Div. 1021, 59 N.Y.S.2d 400; Liebmann v. Aldhous, 105 Misc. 728, 173 N. Y.S. 553.

4. Rosenthal v. West, 274 App.Div. 442, 84 N.Y.S.2d 452.

which notice has been noted or issued by the District authorities. If the contract was intended to cover all violations regardless of notice it would have said so in plainer language. Its language is that all notices of violations against or affecting the property at the date of the settlement shall be complied with. This emphasis upon notice indicates that compliance is required only with those violations of which notice has been given or noted.

The record shows that although the sewer was available in 1939 no notice of violation was given by the District to the Davidsons, who lived there until 1942; none was given to the Krafts, who owned the property from 1942 to 1943; and no notice was given to the Lowes until they had lived there for three years. There is no explanation why notice was not given earlier, but an employee of the health department, called as a witness for the appellees, testified that the record showed no notice until October 1946.

We conclude that no notice of violation having been issued or noted by the District authorities prior to the date of conveyance, there was no breach of the contract by the vendors.

 With respect to the count in tort, appellees' testimony was that when they inspected the house Mrs. Lowe asked William B. Kraft particularly about the wiring and plumbing and he replied that it was all right; that he said nothing about the septic tank and they were not aware of its existence until long after they had purchased the house.

This evidence, if accepted by the trial court, would support a finding of deceit on the part of the seller. "A statement in a business transaction which, while stating the truth so far as it goes, the maker knows or believes to be materially misleading because of his failure to state qualifying matter is a fraudulent misrepresentation." Re-

statement, Torts, § 529.[5] Kraft's statement that the plumbing was all right was true to the extent that the system was in good operating condition; but he knew that the system was not connected to the public sewer and must have known that this fact would be of material interest to the prospective purchaser. A sewerage system connected to a septic tank may not be a defective system but in this jurisdiction it is an incomplete or temporary system because eventually use of the septic tank must be discontinued and connection must be made with the public sewer at a substantial cost. Kraft was not bound to make any representation regarding the plumbing facilities of the house, but when he undertook to represent it as all right he was under a duty to go further and inform the purchasers of such facts in his knowledge as would serve to qualify his representation. "A statement containing a half-truth may be as misleading as a statement wholly false." Restatement, Torts, § 529, Comment a.[6]

 Appellants urge that the conversation regarding the condition of the plumbing ought not to have been admitted because its effect was to vary the terms of the contract, particularly that part of the contract which stated: "Purchaser buys above mentioned property as is." However, one cannot by misrepresentation induce another to enter into a contract and then rely upon a provision of the contract to avoid the consequences of his misrepresentation.[7]

 Appellants also contend that appellees' cause of action is barred by the statute of limitations inasmuch as the action was commenced more than three years after the contract was closed. The rule in this jurisdiction is "that in an action based on fraud, the statute of limitations begins to run, not when the cause of action accrued, but from the discovery of the facts out of which the claim arose, or from the time when the facts should have reasonably been found out in

5. This statement has been approved in many cases. E. g., Equitable Life Ins. Co. v. Halsey, Stuart & Co., 312 U.S. 410, 668, 61 S.Ct. 623, 85 L.Ed. 920; Borzillo v. Thompson, D.C.Mun.App., 57 A.2d 195.

6. See Tucker v. Beazley, D.C.Mun.App., 57 A.2d 191, and cases there cited.

7. Robinson v. Carter, D.C.Mun.App., 77 A.2d 174.

the exercise of due diligence. * * * it is immaterial whether the action is legal or equitable in its nature." Johnson v. Taylor, D.C.D.C., 73 F.Supp. 537, per Holtzoff, J. This action was brought within three years after the existence of the septic tank was discovered by the Lowes. There is nothing in the record to show that they should have even suspected its existence until the pipes clogged up. The vent pipe from the septic tank which should have protruded above the ground had been covered up by some grading operations of the Krafts. An examination of the records of the sewer department of the District would probably have disclosed the lack of connection with the public sewer, but we see no reason why such examination should have been made under the circumstances in this case. The sewer department records did not afford constructive notice.[8]

■ Finally, appellants question the evidence and measure of damages. The evidence of damages consisted of proof of what appellees paid in discovering the septic tank and its location, in clearing, the lines to and outlet from the tank, and in making connection with the public sewer. There was no testimony as to the reasonableness of the amounts so paid, but we need not consider whether such latter testimony was required. We have ruled that in this jurisdiction the measure of damages in an action for deceit in the sale of property is the difference between the amount paid and the market value of the thing acquired. See Horning v. Ferguson, D.C.Mun.App., 52 A.2d 116, and cases there cited. Here there was no proof that the value of the property purchased was less than the amount paid for it. Without such proof there was no proof of loss.

Accordingly the judgment must be reversed and a new trial ordered. The new trial, however, shall be limited to the issue of damages.

■ One final point requires consideration. The judgment was rendered against the three defendants, William B., Melvin L. and Helen M. Kraft. The notice of appeal states William B. Kraft and Melvin L. Kraft appeal from the judgment. There is now a motion before us to permit correction of the record to indicate that the appeal is on behalf of Helen M. Kraft also, it being alleged that her name was inadvertently and erroneously omitted from the notice of appeal. Appellees oppose the motion on the ground that to permit the adding of a party not named in the notice of appeal would be in effect to extend the time for taking an appeal, which we have previously ruled cannot be done. Beach v. District of Columbia, D.C.Mun.App., 44 A.2d 926. Undoubtedly the notice of appeal provided for by our Rule 16 requires that it shall specify all parties taking the appeal, as does F.R.C. P. 73 (b) upon which our rule is based, and generally a party not named in the notice cannot be considered a party to the appeal. However, under the circumstances of this case and in view of the fact that the new trial will be limited to the issue of damages, we feel we should exercise the broad appellate power "to make such disposition of the case as justice requires"[9] and reverse the judgment as to Helen M. Kraft although technically she may not have appealed.[10] Otherwise, there would result judgments for different amounts for the same tort.[11]

Judgment as to all defendants reversed with instructions to grant a new trial limited to the issue of damages.

8. Cf. District-Florida Corp. v. Penny, 62 App.D.C. 268, 66 F.2d 794.

9. State of Minnesota v. National Tea Co., 309 U.S. 551, 555, 60 S.Ct. 676, 679, 84 L.Ed. 920.

10. Cf. In re Barnett, 2 Cir., 124 F.2d 1005; Maryland Casualty Co. v. City of South Norfolk, 4 Cir., 54 F.2d 1032, certiorari denied, 286 U.S. 562, 52 S.Ct. 644, 76 L.Ed. 1295.

11. Cf. Polkowski v. St. Louis Public Service Co., 229 Mo.App. 24, 68 S.W.2d 884.